J. David Cabello (*pro hac vice* pending)
david@chzfirm.com
**CABELLO HALL ZINDA, PLLC**
801 Travis Street, Suite 1610
Houston, Texas  77002
Tel.: (832) 631-9990
Fax: (832) 631-9991

Rami Bachour (SBN 324844)
rbachour@bachmili.com
**BACH MILI LLP**
1800 Vine St., Ste 100
Hollywood, CA  90028
Tel.:  (310) 300-8350

*Attorneys for Plaintiff*
*Good Sportsman Marketing, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOD SPORTSMAN MARKETING, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>EMBLEM OUTDOOR LLC,<br><br>          Defendant. | Case No. 5:25-cv-3255<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Good Sportsman Marketing, L.L.C. ("GSM"), by and through its attorneys, files this Original Complaint, requesting permanent injunctive relief and damages for copyright infringement under the United States Copyright Act (17 U.S.C. § 501 et seq.), trade dress infringement under the Lanham Act (15 U.S.C. § 1125(a)(1)(A)), trade dress dilution under the Lanham Act (15 U.S.C. § 1125(c)), and California common law trade dress infringement, unfair competition, and unjust enrichment against Defendant Emblem Outdoor LLC ("Defendant" or "Emblem") and any other unknown entities controlled by or acting under the direction of Emblem in

connection with the manufacturing, marketing, offer for sale, sale, and distribution copyright and trade dress infringing electronic earmuff products.

## NATURE OF THE CASE

1.    This is an action for copyright infringement of GSM's federally registered copyright under the Copyright Act (Title 17 of the United States Code), trade dress infringement under the Lanham Act (15 U.S.C. §1125(a)(1)(A)), trade dress dilution under the Lanham Act (15 U.S.C. § 1125(c)), and California common law trade dress infringement, unfair competition, and unjust enrichment.

2.    GSM seeks permanent injunctive and monetary relief, including damages for Defendant's willful infringement under the Copyright Act and the Lanham Act and violations of California common law.

## THE PARTIES

3.    Plaintiff Good Sportsman Marketing, L.L.C. is a company organized and doing business under the laws of Delaware, currently headquartered in Irving, Texas, with prior headquarters in Grand Prairie, Texas.  GSM sells, advertises, and markets its products nationwide through major, nationwide retailers online and through brick and mortar stores such as Amazon, Academy Sports and Outdoors, Bass Pro Shops, Cabela's, Dick's Sporting Goods, Home Depot, MidwayUSA, Range USA, Sam's Club, Sportco, Sportsman's Warehouse, Walmart, and others as well as through GSM's own website, Walkersgameear.com.  Walker's® is one of many brands owned by GSM.

4.    Defendant Emblem Outdoor LLC is a limited liability company organized and doing business under the laws of California.  Defendant has a principal place of business at 36773 Oak Meadows Place, Murrieta, California 92562-4386, located in Riverside County.

5.    Defendant may be served through its registered agent:  Rocket Corporation Services, Inc., 2804 Gateway Oaks Drive, Suite 100, Sacramento, California 95833

**JURISDICTION AND VENUE**

6.      The Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331, because this Complaint involves federal questions arising under the laws of the United States, specifically under the United States Copyright Act (17 U.S.C. § 501 et seq.) and the Lanham Act (15 U.S.C. § 1051 et seq.)

7.      The Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a), because the parties have diversity of citizenship and the amount in controversy is over $75,000.

8.      The Court has supplemental jurisdiction over claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant has minimum contacts with the forum by owning, operating, doing business, and residing in this District and Defendant is incorporated as a limited liability company in the State of California.

10.     Venue is proper in this District pursuant to at least 28 U.S.C. § 1400(a) and 28 U.S.C. §§ 1391(b), (c).

**GSM'S INTELLECTUAL PROPERTY**

11.     GSM is a leading provider of sporting goods to hunters, shooters, fishermen, and other outdoorsmen in North America.

12.     For many years, GSM has continuously engaged in the development, manufacture, and sale equipment for hunters and shooters, including electronic earmuffs designed for hearing protection and sound enhancement.  GSM created and sells unique, distinctive, and nonfunctional designs in connection with electronic earmuffs that are marketed and sold under the brand, Walker's®, in connection with a product line called, Razor®. *See* https://www.walkersgameear.com/razor-slim-electronic-ear-muff/) for various models / SKUs of Walker's® Razor® electronic earmuffs.

13.     The design of the Walker's® Razor® brand of electronic earmuffs was

created in 2015 and introduced into the marketplace in early 2016.

14.    GSM has extensively and continuously promoted and used these designs in in connection with sales of its Walker's® Razor® electronic earmuffs in the United States and in California for about ten years through present day.

15.    Walker's® Razor® electronic earmuffs are one of GSM's most popular products, and since introduction to the market in 2016, they have become a leading brand of electronic earmuffs among hunters and recreational shooters.

16.    GSM has sold over 5.5 million units of Walker's® Razor® electronic earmuffs to distributors and customers in the United States and California, which has generated multi-millions of dollars of revenue from such sales.  Through such extensive and continuous promotion and use throughout the United States and California of the Walker's® Razor® electronic earmuff designs, GSM has become associated by relevant consumers in the marketplace, as the origin, source, or producer of Walker's® Razor® earmuff.  Consumers have recognized that these earmuffs are high quality products originating from GSM through its Walker's® brand.

## GSM'S U.S. COPYRIGHT REGISTRATION

17.    GSM is the owner of design drawings in connection with Walker's® Razor® electronic earmuffs.

18.    The Walker's® Razor® electronic earmuffs design drawings are protected works under the United States Copyright Act.  These design drawings are wholly original works and are fixed in various tangible products, thereby qualifying as copyrightable subject matter under the United States Copyright Act, 17 U.S.C. § 101 et seq.

19.    GSM is the federally registered copyright owner of five (5) design drawings of the Walker's® Razor® electronic earmuffs as set forth in the 2019 U.S. Copyright Registration No. VAu1-377-848 for "Electronic Ear Muffs," which was supplemented in 2020 with VAu001419213 / 2020-10-28.   The supplemental registration merely corrected the spelling of the registrant's city address from "Grand

Prarie" to "Grand Prairie."  A copy of the Certificate of Registration along with the design drawings submitted for registration, and a copy of the supplemental registration have been created as a composite exhibit, attached hereto as **Exhibit 1**.

20.    The registration of the work was made within 5 years of the first publication of the work and the certificate of registration serves as prima facie evidence of the validity of the copyright and the facts stated in the certificate. 17 U.S.C. § 410(c).

21.    In connection with the copyright registration, GSM is the owner of the exclusive rights in copyrighted works, including the exclusive rights to reproduce the copyrighted work, prepare derivative works based on the copyrighted work, and distribute copies of the copyrighted work to the public. 17 U.S.C. § 106.

22.    At all times relevant hereto, GSM has been the sole owner and proprietor of all rights, title, and interest in and to the copyright in the Walker's® Razor® electronic earmuff drawings, and such copyright is valid, subsisting and in full force and effect.

23.    Some of the copyrighted design drawings from Exhibit 1 are shown below, which have been enlarged for easier viewing:



Left View                    Front View                    Right View

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





24.    The copyrighted design drawings were used to develop and manufacture, tangible products of GSM, namely its line of various Walker's® Razor® electronic earmuffs.

25.    Photos of one model of GSM's Walker's® Razor® electronic earmuffs, developed and manufactured based on GSM's copyrighted design drawings, are shown below:

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






## GSM'S U.S. TRADEMARK REGISTRATIONS

26.    GSM is the owner of U.S. Trademark Registration No. 3,630,504 for WALKER'S® in connection, in part, with sound amplifiers for sound enhancement and personal safety.

27.    GSM is the owner of U.S. Trademark Registration No. 7,399,139 for WALKER'S® in connection, in part, with electronic sound amplifiers with a compression circuit that also provide hearing protection and hearing enhancement devices, namely, headsets.

28.    GSM is the owner of U.S. Trademark Registration No. 5,147,672 for RAZOR® in connection with hearing muffs for protecting hearing and hearing muffs for the amplification of sound for the hard of hearing

## GSM'S TRADE DRESS

29.    GSM owns trade dress rights relating to the total image, design, and overall appearance of Walker's® Razor® electronic earmuffs.

30.    GSM's trade dress for the design of Walker's® Razor® electronic earmuffs are shown in the photographs in paragraph 25, above.    Additional photographs of the trade dress design may be viewed at https://www.walkersgameear.com/razor-slim-electronic-ear-muff/.

### GSM's Trade Dress Has Acquired Secondary Meaning

31.    GSM's trade dress in the design of Walker's® Razor® electronic earmuffs has acquired distinctiveness through secondary meaning.  The trade dress serves as a source-identifier, identifying GSM as the origin or source of Walker's® Razor® earmuffs.

32.    GSM has invested substantial resources in building its trade dress. It has been using the trade dress exclusively and continuously for about the past ten years and continues to use it through the present day.

33.    GSM has invested substantially in the trade dress through extensive use, time, labor, effort, skill, and money in connection with developing, marketing,

advertising, distributing, and selling Walkers's® Razor® earmuffs, which is evidenced by GSM's consistently high sales volume, with over 5.5 million units sold across the United States and multi-millions of dollars of revenue generated from such sales.

34.    As a result of at least GSM's continuous and exclusive use of the trade dress in the design of Walker's® Razor® electronic earmuffs throughout the United States and in California, GSM has gained highly valuable goodwill.

35.    GSM's years of exclusive use of the trade dress for the total image and overall appearance for the design of Walker's® Razor® electronic earmuffs, have resulted in recognition by relevant consumers in the public to associate the trade dress design with GSM (or its Walker's® brand) as being the origin or source of such earmuffs, thereby acquiring distinctiveness through secondary meaning in the marketplace.

**GSM's Trade Dress is Famous**

36.    GSM's trade dress in the design of Walker's® Razor® is famous because it has become widely recognized by the general consuming public in the United States as a designation that the source of Walker's® Razor® earmuffs is GSM through its Walker's® brand.

37.    The long duration of GSM's use of the trade dress for about the past ten years, the large extent of use of the trade dress, including use of the trade dress on at least twenty-five (25) models / SKUs of Walker's® Razor® electronic earmuffs (*see* https://www.walkersgamear.com/razor-slim-electronic-ear-muff/), and the wide, geographic reach of the trade dress to the general public across the United States through extensive advertising and publicity of the trade dress, including through nationwide brick and mortar retail stores (and these stores' respective e-commerce websites), and also through online only stores, such as Amazon.com and Walkersgameear.com, and extensive advertising, publicity, and use of the trade dress at various trade shows across the United States and also via reviews of Walker's®

Razor® earmuffs found online (e.g. Youtube.com), as well as the over 5.5 million units sold across the United States which has generated multi-millions of dollars of revenue—all of which have created a wide extent of actual recognition that GSM's trade dress is famous.

**GSM's Trade Dress is Nonfunctional**

38.    The trade dress in the design of Walker's® Razor® earmuffs is nonfunctional and consists of nonfunctional elements.  Specifically, the trade dress in Walker's® Razor® electronic earmuffs consists of the total image, design, and overall appearance of the earmuffs, including:

(a)    the overall shape, size, and design of the earmuffs;

(b)    the shape, size, and design of the outer casing and inner ear cups, both of which among other things, include an elliptical bottom and a non-elliptical top;

(c)    the shape, size, design, and placement of the power/volume dial, the two microphones, audio input jack, and audio input jack plug cover;

(d)    the shape, size, design, and placement of three, equidistant horizontal lines engraved on approximately the center area of each of the outer casings; and

(e)    the shape, size, design, and placement of the decorative aspects of the headband, including an elongated hexagonal banner spanning across the top of the headband.

39.    GSM's trade dress is not functional because the overall appearance and arrangement of the foregoing elements serve no functional purpose—they are merely decorative or aesthetic.  For example, the shape, size, and design of the outer casing and inner ear cups are not essential to the use of the product.  The shape, size, design, and placement of the power/volume dial, the two microphones, audio input jack, and audio input jack plug cover are also not essential to the use of the product.  Likewise, the shape, size, design, and placement of the three engraved horizonal lines found on the outer casings are not essential to the use of the product.  Further, the shape, size, design, and placement of the elongated hexagonal banner spanning across the top of

13
COMPLAINT

the headband also have no functional purpose.

40.    Although the Walker's® Razor® earmuffs are functional as a product used by hunters and shooters for hearing protection and sound enhancement and contain components that serve a function, the trade dress is for the total image, design, and overall appearance of the earmuffs, which consists of the shape, size, placement of various elements of the earmuffs—none of which serve functional purposes.

41.    For example, the outer casing of the earmuffs is functional to house the internal speakers for sound enhancement.  But the shape of the outer casing as well as the three horizonal, equidistant lines engraved on the outer casing, serve no functional purpose.

42.    As another example, the headband is functional in that its purpose is to connect the two outer casings containing ear cups together, so that the product can rest securely on top of a user's head.  However, the elongated hexagonal banner spanning across the top of the headband is purely an aesthetic design choice and has no effect on the function of the earmuff.

43.    In addition, the earmuffs have other functional components such as microphones, a power/volume dial, and an audio input jack.  However, the design choice on where to physically place the location of these components relative to each other (i.e., spatial arrangement to each other) and their respective sizes, shapes, and appearance have no function.

44.    Competitors would not be at a disadvantage if they designed electronic earmuffs with the foregoing functional component with different sizes, shapes, designs, and physical placements (i.e., spatial arrangement) as there are alternative designs available.

## DEFENDANT'S UNLAWFUL ACTIVITIES

45.    Defendant owns, operates, and maintains a website available at Emblemoutdoor.com, which markets, advertises, offers for sale, sells, and distributes numerous products and accessories for outdoor field use, including hearing protection

earmuffs, firearms, scopes, magazines, belts, and flashlights.

46.    Defendant markets, promotes, advertises, offers for sale, sells, and distributes various models of electronic earmuffs under the Emblem Outdoor brand under a product line called, Shield Pro.

47.    Shield Pro electronic earmuffs are offered in at least three colors (i.e., black, green, and brown / desert) and are available for sale on Emblemoutdoor.com as shown below:



//
//
//
//
//
//
//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT

48.     Defendant also markets, promotes, advertises, offers for sale, sells, and distributes Shield Pro electronic earmuffs through Amazon.com, a large, third-party online retailer.   Sales listings of Shield Pro electronic earmuffs are shown below from screenshots taken from Amazon.com:



//

//

//

//

//

//

//

17
COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //



49.     Defendant also markets, promotes, advertises, offers for sale, sells, and distributes Shield Pro electronic earmuffs through Walmart.com, a large third-party online retailer.   Sales listings of Shield Pro electronic earmuffs are shown below from screenshots taken from Walmart.com:

//

//

//

//

//

//

//





1    50.    Additional photos of Shield Pro electronic earmuffs are shown below:



2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24    //
25    //
26    //
27    //
28    //





//
//
//
//
//
//
//
//
//

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22        51.    Defendant maintains and controls social media websites to market,

23   advertise, and promote its Shield Pro electronic earmuffs, including on Facebook.com,

24   Instagram.com, and Youtube.com.

25        52.    A screenshot of Defendant's Facebook.com webpage is shown below,

26   marketing Shield Pro earmuffs:

27   //

28   //



53.    A screenshot of Defendant's Instagram.com webpage is shown below, marketing Shield Pro earmuffs:

//

//

//

//

//

//

//

//

//

//

//

//

//

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

COMPLAINT

54.    A screenshot of Defendant's Youtube.com webpage is shown below, marketing Shield Pro earmuffs:



55.    Upon information and belief, Defendant first began advertising, marketing, promoting, offering for sale, selling, and distributing its Shield Pro electronic earmuffs sometime after February 2, 2025—the date it filed its Articles of Organization with the Secretary of State of California.

56.    As set forth in the above photographs, Defendant's Shield Pro electronic earmuffs have nearly an identical appearance or design when compared to GSM's Walker's® Razor® electronic earmuffs and when compared to the design drawings in GSM's copyrighted design.

57.    The degree of similarity between the design of Shield Pro electronic earmuffs and GSM's trade dress design in its Walker's® Razor® electronic earmuffs and copyrighted design drawings is the same or substantially similar.

58.    Defendant's Shield Pro electronic earmuffs have copied and used virtually all protectable elements of GSM's trade dress design and copyrighted design drawings, including the overall shape, size, and design of the earmuffs; the shape, size, and design of the outer casing and inner ear cups; the shape, size, design, and placement of the power/volume dial, the two microphones, audio input jack, and audio input jack plug cover; the shape, size, design, and placement of the three, equidistant horizontal lines engraved on approximately the center area of each of the outer casings; and the shape, size, design, and decorative aspects of the headband, including an elongated hexagonal banner spanning across the top of the headband.

59.    Defendant infringed on GSM's copyright and trade dress rights and traded off of the goodwill of GSM's popular, distinctive design of its Walker's® Razor® electronic earmuffs when Defendant markets, promotes, advertises, offers for sale, sells, and distributes Shield Pro electronic earmuffs in interstate commerce in direct competition with GSM.

60.    Upon information and belief, Defendant has sourced its Shield Pro earmuffs from factories that have access to GSM's copyrighted design drawings and/or derivatives of these drawings, including the factories' use of molds to manufacture Defendant's Shield Pro earmuffs.

61.    Defendant is exploiting GSM's copyright and the protected trade dress in Walker's® Razor® electronic earmuffs for commercial purposes without GSM's authorization.

62.    Defendant's conduct in marketing, advertising, offering for sale, selling, and distributing Shield Pro electronic earmuffs, causes a likelihood of confusion in the marketplace, whereby consumers mistakenly believe that Defendant's Shield Pro earmuffs originate from GSM or were otherwise approved or sponsored by GSM or made from the same factory.

63.    Defendant's unlawful conduct in causing a likelihood of confusion in the marketplace, constitutes an unlawful attempt to trade on GSM's goodwill and

reputation for offering high quality products, and thereby causing dilution of GSM's trade dress and causing harm to its business reputation.

64.    Defendant's unauthorized use of GSM's famous trade dress for the design of Walker's® Razor® electronic earmuffs has diluted the trade dress by blurring.

65.    Based on Defendant's unlawful conduct, dilution by blurring arises from the similarity between the design of Defendant's Shield Pro earmuffs and GSM's Walker's® Razor® earmuffs, in that the similarities impair the distinctiveness of GSM's famous trade dress.

66.    Defendant's unlawful conduct in marketing, advertising, promoting, offering for sale, selling, and distributing Shield Pro electronic earmuffs has caused harm and irreparable damage to GSM's reputation.  GSM has lost and continues to lose sales from Walker's® Razor® electronic earmuffs due to Defendant's unlawful conduct. Due to Defendant's intentional copying and use of GSM's design, the purchasing public would believe that Defendant's Shield Pro earmuffs are manufactured from the same factory. Defendant's unlawful conduct causes a false impression amongst the consuming public, that Shield Pro earmuffs are affiliated, associated, sponsored, licensed, or approved for sale by GSM, which they are not.

**Defendant's Alternative Designs of Electronic Earmuffs**

67.    There are alternative designs of electronic earmuffs that exist in the marketplace that do not have the same or similar total image, design, and overall appearance of Walker's® Razor® electronic earmuffs nor the same or similar design as GSM's copyrighted design drawings.

68.    For example, Defendant offers for sale, at least two electronic earmuffs sold under product lines called, Shield XT and SmartTAC.

69.    A photograph of Defendant's Shield XT electronic earmuff is shown below:

//

//

1
2
3
4
5
6
7
8
9
10
11



12    70.    Photographs of Defendant's SmartTAC electronic earmuff are shown
13  below:

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT

71.     Both of Defendant's Shield XT and SmartTAC electronic earmuffs have a different design and appearance compared to the design and appearance of GSM's Walker's® Razor® electronic earmuffs and the design drawings in GSM's copyright registration.

72.     For example, the shape, size, and placement of the power/volume dial and microphone on Shield XT and SmartTAC electronic earmuffs are different compared to Walker's® Razor® electronic earmuffs and the design drawings in GSM's copyright registration.

73.     In addition, the size, shape, and textures of the outer casing of the earmuffs on Shield XT and SmartTAC are different compared to Walker's Razor® electronic earmuffs and the design drawings in GSM's copyright registration.

74.     Unlike the outer casing of Walker's® Razor® electronic earmuffs and in the design drawings of GSM's copyright registration, the outer casing of both Shield XT and SmartTAC earmuffs do not have three, equidistant horizontal lines engraved on them.  In fact, Shield XT and SmartTAC earmuffs do not have any horizontal line engravings at all.

75.     Unlike the headband of Walker's® Razor® electronic earmuffs and in the design drawings in GSM's copyright registration, the headbands of both Shield XT and SmartTAC earmuffs do not have an elongated hexagonal banner spanning across the top of the headband.

76.     The fact that Defendant offers two electronic earmuffs (Shield XT and SmartTac) that have a different design and appearance compared to Walker's® Razor® electronic earmuffs and the design drawings in GSM's copyright registration, supports the fact that there are non-infringing alternatives to GSM's copyrighted designs and trade dress in Walker's® Razor® electronic earmuffs.

77.     Defendant had actual knowledge that non-infringing designs of electronic earmuffs exist, but intentionally and willfully chose to copy the copyrighted design drawings and use GSM's trade dress design in Walker's® Razor® earmuffs, to sell

Shield Pro earmuffs.

**Cease and Desist Letters to Defendant**

78.     In a letter dated May 21, 2025, GSM sent a cease and desist letter ("First Letter") via FedEx and email to Defendant, a copy is attached hereto as **Exhibit 2**. This letter was delivered to Defendant on May 23, 2025 by FedEx. The First Letter provided actual notice of GSM's intellectual property rights with respect to its copyright registration and trade dress in connection with Walker's® Razor® electronic earmuffs and set forth Defendant's infringement of such rights in connection with Shield Pro earmuffs.  The First Letter demanded, *inter alia*, that Defendant *immediately* cease and desist from advertising, marketing, offering for sale, selling, and distributing all models of Shield Pro electronic earmuffs on any website.

79.     On June 12, 2025, counsel for GSM received a response letter dated June 11, 2025 from counsel for Defendant, a copy is attached hereto as **Exhibit 3**. Defendant's response letter disagreed with GSM's assertions of copyright and trade dress infringement.  The response letter concluded by stating:  "All this having been said, the Shield Pro product is not commercially important to Emblem, and it does not plan to sell any additional units once the existing inventory of approximately 400 units has been exhausted."

80.     In a letter dated October 31, 2025 ("Second Letter") sent by email, counsel for GSM sent a reply to counsel for Defendant, a copy is attached hereto as **Exhibit 4**.  Counsel for GSM further explained how Defendant infringed on the copyright registration and trade dress in Walker's® Razor® electronic earmuffs.  The Second Letter concluded by stating, "We note that your client agreed to cease the sale of further units after exhaustion of current inventory.  As it appears that sales continue, we request an update on the status of sales.  Copyright damages alone for the admitted 400 units will be significant as we are sure you fully appreciate."

81.     It has been over a month since the Second Letter was sent, and despite GSM's request, GSM has not received any update from Defendant on the status of

remaining inventory of Shield Pro products and has not received any communications ever since.

82.    As of the date of this Complaint, Defendant continues to sell and offers for sale Shield Pro electronic earmuffs on at least Emblemoutdoor.com, Amazon.com, and Walmart.com as shown above.

83.    As of the date of this Complaint, Defendant continues to market, advertise, and promote Shield Pro electronic earmuffs on Defendant's social media websites, including Facebook.com, Instagram.com , and Youtube.com as shown above.

84.    On information and belief, Defendant has no intent to stop its infringing business activities and will continue to unlawfully offer for sale and sell Shield Pro earmuffs in direct competition with GSM.

85.    Based on Defendant's illegal conduct, Defendant has infringed on GSM's copyright registration, infringed on GSM's trade dress, diluted GSM's trade dress by blurring, unfairly competed against GSM, and has been unjustly enriched from its unlawful activities.

86.    As a result, GSM has suffered financial damages and irreparable harm to its business reputation and goodwill for which there is no adequate remedy at law.

## COUNT I

## Copyright Infringement (17 U.S.C. § 501(a))

87.    GSM repeats and realleges the allegations set forth above as if fully set forth herein.

88.    GSM is the owner of design drawings in connection with Walker's® Razor® electronic earmuffs, which are protected works under the United States Copyright Act, Title 17 of the United States Code.

89.    All copyrightable aspects of the GSM Walker's® Razor® electronic earmuff design drawings were registered with the United States Copyright Office in 2019 as VAu1377848 and supplemented in 2020 as VAu001419213 / 2020-10-28.

The design drawings were considered to be copyrightable material by the U.S. Copyright Office and the copyright registration is presumed to be valid. A copy of the copyright registration, the copyrighted work, and supplemental registration is attached as a composite exhibit, hereto as at **Exhibit 1**.

90. In connection with the copyrighted design drawings, GSM is the owner of the exclusive rights in copyrighted works set forth in 17 U.S.C. § 106, including the exclusive rights to reproduce the copyrighted work, prepare derivative works based on the copyrighted work, and distribute copies of the copyrighted work to the public.

91. Defendant has violated GSM's copyright by marketing, selling, and distributing Shield Pro electronic earmuffs in the United States, that were manufactured based off of GSM's copyrighted designs of its Walker's® Razor® earmuffs.

92. Defendant's Shield Pro electronic earmuffs have directly copied virtually all artistic elements of GSM's copyrighted design drawings, including the overall shape, size, and design of the earmuffs; the shape, size, and design of the outer casing and inner ear cups; the shape, size, design, and placement of the power/volume dial, the two microphones, audio input jack, and audio input jack plug cover; the shape, size, design, and placement of the three, equidistant horizontal lines engraved on approximately the center area of each of the outer casings; and the shape, size, and design of the headband, including an elongated hexagonal banner spanning across the top of the headband. None of these features are dictated by utility but are rather artistic aspects of the copyrighted design drawings.

93. Upon information and belief, Defendant is obtaining Shield Pro earmuffs from a factory that has access to GSM's copyrighted design drawings and molds based off of the design drawings.

94. Defendant infringed GSM's copyright in violation of 17 U.S.C. § 501 et seq.

95. Defendant intentionally, willfully, and maliciously infringed GSM's

copyright in the Walker's® Razor® electronic earmuff design without GSM's consent or authorization.

96.    Defendant's bad faith is evidenced at least by the direct copying of GSM's copyrighted design and by Defendant's continuing disregard for GSM's copyright, even after having actual notice.

97.    Defendant has made and will continue to make substantial profits and financial gains to which it is not entitled to under law or equity.

98.    Defendant's acts have irreparably harmed, damaged, and will continue to damage GSM and GSM has no adequate remedy at law for the continued sale of Defendant's copyright infringing Shield Pro electronic earmuffs.

99.    Defendant intends to continue its infringing acts, unless restrained by this Court.

100.    GSM is entitled to permanent injunctive relief and is entitled to recover Defendant's profits and GSM's actual damages or statutory damages,  including enhanced statutory damages for willful infringement, reasonable attorney's fees and costs, an order seeking the impoundment and destruction of Defendant's infringing articles, and an order prohibiting the importation into the United States of copies of infringing works, under at least 17 U.S.C. §§ 502-505, 602.

## COUNT II

**Lanham Act Violation for Trade Dress Infringement (15 U.S.C. § 1125(a)(1)(A))**

101.    GSM realleges and incorporates the allegations set forth above as though fully set forth herein.

102.    Defendant's marketing, advertising, promoting, offering to sell, selling, and distributing Shield Pro electronic earmuffs violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), by infringing GSM's trade dress in the design of Walker's® Razor® electronic earmuffs.

103.    Defendant's Shield Pro electronic earmuffs have used GSM's trade dress, including the overall shape, size, and design of the earmuffs; the shape, size, and

design of the outer casing and inner ear cups; the shape, size, design, and placement of the power/volume dial, the two microphones, audio input jack, and audio input jack plug cover; the shape, size, design, and placement of the three, equidistant horizontal lines engraved on approximately the center area of each of the outer casings; and the shape, size, and design of the headband, including an elongated hexagonal banner spanning across the top of the headband. None of these features are dictated by function but are rather decorative or aesthetic aspects of the trade dress.

104. Defendant's unauthorized use of GSM's trade dress and / or colorable imitations thereof, has caused a likelihood of confusion, actual confusion, mistake, or deception as to the affiliation, connection, sponsorship, and / or association of Defendant's Shield Pro products with GSM and as to the origin, sponsorship, license, and / or approval of the infringing Shield Pro products, at least by creating the false and misleading impression that the infringing Shield Pro products are manufactured by, authorized by, licensed by, or otherwise associated with GSM.

105. GSM's trade dress in the Walker's® Razor® electronic earmuffs is distinctive.

106. GSM's trade dress in the Walker's® Razor® electronic earmuffs has acquired distinctiveness through secondary meaning.

107. GSM's trade dress acquired secondary meaning before Defendant commenced its unlawful use of GSM's trade dress in connection with Defendant's Shield Pro infringing products.

108. GSM's trade dress in the Walker's® Razor® electronic earmuffs is nonfunctional.

109. Defendant has infringed GSM's trade dress in violation of 15 U.S.C. §1125(a)(1)(A).

110. Defendant intentionally, willfully, and maliciously infringed GSM's trade dress in the design of Walker's® Razor® electronic earmuffs without GSM's consent or authorization.

111.   Defendant's bad faith is evidenced at least by using GSM's trade dress and by Defendant's continuing disregard for GSM's trade dress rights, even after having actual notice.

112.   Defendant used the trade dress in the design of Walker's® Razor® electronic earmuffs with the clear intent of capitalizing off the goodwill and success of GSM's trade dress protected design.

113.   Defendant has made and will continue to make substantial profits and gains to which it is not entitled in law or equity.

114.   Defendant intends to continue its infringing acts, unless restrained by this Court.

115.   Defendant's use of GSM's trade dress and/or colorable imitations thereof has caused and, unless permanently enjoined, will continue to cause substantial and irreparable injury and damage to GSM for which GSM has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation of GSM for providing high quality products, including its Walker's® Razor® earmuffs.

116.   GSM is entitled to permanent injunctive relief and is entitled to recover Defendant's profits and GSM's actual damages, enhanced damages, costs, and reasonable attorney fees for this being an exceptional case, an order barring the importation into the United States of infringing goods and an order seeking the destruction of infringing articles under at least 15 U.S.C. §§ 1125(b), 1116-1118.

## COUNT III

**Lanham Act Violation for Trade Dress Dilution by Blurring**

**(15.S.C. § 1125(c))**

117.   GSM realleges and incorporates the allegations set forth above as though fully set forth herein.

118.   Defendant's marketing, advertising, promoting, offering to sell, selling, and distributing Shield Pro electronic earmuffs violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(c) by diluting by blurring, GSM's trade dress in the design of

Walker's® Razor® electronic earmuffs.

119.   GSM's trade dress in the design of Walker's® Razor® electronic earmuffs, when taken as a whole, is not functional and is famous.

120.   Defendant's use of GSM's famous trade dress in Walker's® Razor® earmuffs has diluted the trade dress by blurring.

121.   GSM's trade dress in the Walker's® Razor® electronic earmuffs has acquired distinctiveness through secondary meaning.

122.   GSM's trade dress acquired secondary meaning before Defendant commenced its unlawful use of GSM's trade dress in connection with Defendant's Shield Pro infringing products.

123.   The trade dress is highly recognized amongst the general consuming public that GSM is the source of Walker's® Razor® electronic earmuffs.

124.   Defendant's use of GSM's trade dress was unlawfully intended to create an association with GSM's Walker's® Razor® electronic earmuffs.

125.   Defendant's Shield Pro electronic earmuffs have used GSM's trade dress, including the overall shape, size, and design of the earmuffs; the shape, size, and design of the outer casing and inner ear cups; the shape, size, design, and placement of the power/volume dial, the two microphones, audio input jack, and audio input jack plug cover; the shape, size, design, and placement of the three, equidistant horizontal lines engraved on approximately the center area of each of the outer casings; and the shape, size, and design of the headband, including an elongated hexagonal banner spanning across the top of the headband.  None of these features are dictated by function but are rather decorative or aesthetic aspects of the trade dress.

126.   Defendant's unauthorized use of GSM's trade dress is likely to cause dilution and has caused dilution by blurring of the trade dress, because Defendant has impaired the distinctiveness of the trade dress, which occurs by eroding the general consuming public's exclusive identification of GSM's trade dress with GSM, by lessening the capacity of GSM's trade dress to identify and distinguish GSM's

products, and by associating GSM's trade dress with Defendant's products of inferior quality.

127.    Defendant has diluted GSM's trade dress by blurring in violation of 15 U.S.C. §1125(c).

128.    Defendant intentionally, willfully, and maliciously diluted GSM's trade dress in the Walker's® Razor® electronic earmuff design without GSM's consent or authorization.

129.    Defendant's bad faith is evidenced at least by using GSM's trade dress, which is causing dilution by impairing the distinctiveness of the trade dress, and by Defendant's continuing disregard for GSM's trade dress rights, even after having actual notice.

130.    Defendant diluted GSM's trade dress in the design of Walker's® Razor® electronic earmuffs with the clear intent of capitalizing off the goodwill and success of GSM's trade dress protected design.

131.    Defendant has made and will continue to make substantial profits and gains to which it is not entitled in law or equity.

132.    Defendant's acts have irreparably harmed, damaged, and will continue to damage GSM and GSM has no adequate remedy at law for the continued sale of Defendant's trade dress infringing Shield Pro electronic earmuffs that has diluted GSM's trade dress.

133.    Defendant intends to continue its dilution of the GSM trade dress, unless restrained by this Court.

134.    GSM is entitled to a permanent injunction against Defendant because Defendant's use of GSM's trade dress is likely to cause dilution by blurring and has caused dilution by blurring of GSM's famous trade dress, regardless of the presence of absence of actual or likely confusion, of competition, or of actual economic injury, as set forth in at least 15 U.S.C. §§ 1125(c)(1), (c)(5), 1116(a).

135.    Pursuant to the additional remedies set forth in 15 U.S.C. § 1125(c)(5),

as the owner of a famous trade dress that has been diluted by blurring, GSM is also entitled to at least the remedies set forth in 15 U.S.C. §§ 1117(a), 1118.

**COUNT IV**

**Common Law Trade Dress Infringement**

136.    GSM realleges and incorporates the allegations set forth above as though fully set forth herein.

137.    GSM's trade dress in the design of Walker's® Razor® electronic earmuffs is entitled to protection in connection with California common law for trade dress infringement.

138.    Defendant's marketing, advertising, promoting, offering to sell, selling, and distributing Shield Pro electronic earmuff products constitutes a violation of common law trade dress infringement under the laws of California by infringing GSM's trade dress in the design of Walker's® Razor® electronic earmuffs.

139.    Defendant's Shield Pro electronic earmuffs have used GSM's trade dress, including the overall shape, size, and design of the earmuffs; the shape, size, and design of the outer casing and inner ear cups; the shape, size, design, and placement of the power/volume dial, the two microphones, audio input jack, and audio input jack plug cover; the shape, size, design, and placement of the three, equidistant horizontal lines engraved on approximately the center area of each of the outer casings; and the shape, size, and design of the headband, including an elongated hexagonal banner spanning across the top of the headband.  None of these features are dictated by function but are rather decorative or aesthetic aspects of the trade dress.

140.    Defendant's unauthorized use of GSM's trade dress and / or colorable imitations thereof, has caused a likelihood of confusion, actual confusion, mistake, or deception as to the affiliation, connection, sponsorship, and / or association of Defendant's Shield Pro products with GSM and as to the origin, sponsorship, license, and / or approval of the infringing Shield Pro products, at least by creating the false and misleading impression that the infringing Shield Pro products are manufactured

40

**COMPLAINT**

by, authorized by, licensed by, or otherwise associated with GSM.

141.   GSM's trade dress in the Walker's® Razor® electronic earmuffs is distinctive.

142.   GSM's trade dress in the Walker's® Razor® electronic earmuffs has acquired distinctiveness through secondary meaning.

143.   GSM's trade dress acquired secondary meaning before Defendant commenced its unlawful use of GSM's trade dress in connection with Defendant's Shield Pro infringing products.

144.   GSM's trade dress in the Walker's® Razor® electronic earmuffs is nonfunctional.

145.   Defendant has infringed GSM's trade dress in violation of California common law.

146.   Defendant intentionally, willfully, and maliciously infringed GSM's trade dress in the design of Walker's® Razor® electronic earmuffs without GSM's consent or authorization.

147.   Defendant's bad faith is evidenced at least by using GSM's trade dress and by Defendant's continuing disregard for GSM's trade dress rights, even after having actual notice.

148.   Defendant used the trade dress in the design of Walker's® Razor® electronic earmuffs with the clear intent of capitalizing off the goodwill and success of GSM's trade dress protected design.

149.   Defendant has made and will continue to make substantial profits and gains to which it is not entitled in law or equity.

150.   Defendant's acts have irreparably harmed, damaged, and will continue to damage GSM and GSM has no adequate remedy at law for the continued sale of Defendant's trade dress infringing Shield Pro electronic earmuffs.

151.   Defendant intends to continue its infringing acts, unless restrained by this Court.

152.    Defendant's use of GSM's trade dress and/or colorable imitations thereof has caused and, unless permanently enjoined, will continue to cause substantial and irreparable injury and damage to GSM for which GSM has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation of GSM for providing high quality products, including its Walker's® Razor® earmuffs.

153.    GSM is entitled to permanent injunctive relief, and GSM is also entitled to recover at least GSM's damages and Defendant's profits, punitive damages, costs, and reasonable attorney fees.

## COUNT V

### Common Law Unfair Competition

154.    GSM realleges and incorporates the allegations set forth above as though fully set forth herein.

155.    GSM's trade dress in the design of Walker's® Razor® electronic earmuffs is entitled to protection in connection with California common law for unfair competition.

156.    Defendant's marketing, advertising, promoting, offering to sell, selling, and distributing Shield Pro electronic earmuff products, in direct competition with GSM, constitutes a violation of common law unfair competition under the laws of California by infringing GSM's trade dress in the design of Walker's® Razor® electronic earmuffs.

157.    Defendant's Shield Pro electronic earmuffs have used GSM's trade dress, including the overall shape, size, and design of the earmuffs; the shape, size, and design of the outer casing and inner ear cups; the shape, size, design, and placement of the power/volume dial, the two microphones, audio input jack, and audio input jack plug cover; the shape, size, design, and placement of the three, equidistant horizontal lines engraved on approximately the center area of each of the outer casings; and the shape, size, and design of the headband, including an elongated hexagonal banner spanning across the top of the headband.  None of these features are dictated by

function but are rather decorative or aesthetic aspects of the trade dress.

158.  Defendant has unfairly interfered with GSM's business in violation of California unfair competition law by infringing GSM's trade dress.

159.  Defendant's unauthorized use of GSM's trade dress and / or colorable imitations thereof, has caused a likelihood of confusion, actual confusion, mistake, or deception as to the affiliation, connection, sponsorship, and / or association of Defendant's Shield Pro products with GSM and as to the origin, sponsorship, license, and / or approval of the infringing Shield Pro products, at least by creating the false and misleading impression that the infringing Shield Pro products are manufactured by, authorized by, licensed by, or otherwise associated with GSM.

160.  GSM's trade dress in the Walker's® Razor® electronic earmuffs is distinctive.

161.  GSM's trade dress in the Walker's® Razor® electronic earmuffs has acquired distinctiveness through secondary meaning.

162.  GSM's trade dress acquired secondary meaning before Defendant commenced its unlawful use of GSM's trade dress in connection with Defendant's Shield Pro infringing products.

163.  GSM's trade dress in the Walker's® Razor® electronic earmuffs is nonfunctional.

164.  Defendant has infringed GSM's trade dress in violation of California common law, and as a result, has violated California unfair competition law.

165.  Defendant intentionally, willfully, and maliciously infringed GSM's trade dress in the design of Walker's® Razor® electronic earmuffs without GSM's consent or authorization, in direct competition with GSM.

166.  Defendant's bad faith is evidenced at least by using GSM's trade dress and by Defendant's continuing disregard for GSM's trade dress rights, even after having actual notice.

167.  Defendant used the trade dress in the design of Walker's® Razor®

electronic earmuffs with the clear intent of capitalizing off the goodwill and success of GSM's trade dress protected design.

168.    Defendant has made and will continue to make substantial profits and gains to which it is not entitled in law or equity.

169.    Defendant's acts have irreparably harmed, damaged, and will continue to damage GSM and GSM has no adequate remedy at law for the continued sale of Defendant's trade dress infringing Shield Pro electronic earmuffs.

170.    Defendant intends to continue its infringing acts, unless restrained by this Court.

171.    Defendant's use of GSM's trade dress and/or colorable imitations thereof has caused and, unless permanently enjoined, will continue to cause substantial and irreparable injury and damage to GSM for which GSM has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation of GSM for providing high quality products, including its Walker's® Razor® earmuffs.

172.    Defendant's conduct in using GSM's trade dress to sell its Shield Pro earmuffs in direct competition with GSM and without authorization, constitutes unfair competition.

173.    GSM is entitled to permanent injunctive relief, and GSM is also entitled to recover at least GSM's damages and Defendant's profits, punitive damages, costs, and reasonable attorney fees.

## COUNT VI

### Common Law Unjust Enrichment

174.    GSM realleges and incorporates the allegations set forth above as though fully set forth herein.

175.    Defendant's marketing, advertising, promoting, offering to sell, selling, and distributing Shield Pro electronic earmuff products, in direct competition with GSM, constitutes unjust enrichment under California common law, because Defendant's Shield Pro earmuffs infringe on GSM's trade dress for the design of

Walker's® Razor® earmuffs, for which Defendant has received benefits for which it has unjustly retained.

176.   Defendant's Shield Pro electronic earmuffs have used GSM's trade dress, including the overall shape, size, and design of the earmuffs; the shape, size, and design of the outer casing and inner ear cups; the shape, size, design, and placement of the power/volume dial, the two microphones, audio input jack, and audio input jack plug cover; the shape, size, design, and placement of the three, equidistant horizontal lines engraved on approximately the center area of each of the outer casings; and the shape, size, and design of the headband, including an elongated hexagonal banner spanning across the top of the headband.   None of these features are dictated by function but are rather decorative or aesthetic aspects of the trade dress.

177.   Defendant has been unjustly enriched, because Defendant has wrongfully obtained benefits at GSM's expense.  Defendant has, *inter alia*, operated with an undue advantage by avoiding the high costs of development, advertising and promotion that made Walker's® Razor® electronic earmuffs a preferred product in the relevant market. Defendant rode on the coattails of the strong reputation that GSM earned in connection with Walker's® Razor® electronic earmuffs as being high quality products that have achieved great success in the marketplace for GSM.

178.   GSM developed the trade dress in the design of Walker's® Razor® electronic earmuffs through extensive time, labor, effort, skill, and money.  Defendant has wrongfully used and is wrongfully using GSM's trade dress and/or colorable imitations thereof, in competition with GSM, and has gained and is gaining a wrongful benefit by undue advantage through such use, which it has unjustly retained.

179.   Defendant has not been burdened with the expenses incurred by GSM in developing the trade dress, yet Defendant is unfairly obtaining the resulting benefits for its own business through sales of its trade dress infringing Shield Pro earmuffs.

180.   Defendant has wrongfully received and retained and is wrongfully receiving and retaining benefits at GSM's expense by taking undue advantage and

free-riding on GSM's efforts and investments from GSM's development of the trade dress design in Walker's® Razor® earmuffs, and enjoying the benefits of GSM's hard-earned goodwill and reputation by profiting from sales of Shield Pro earmuffs.

181. GSM's trade dress for the design of Walker's® Razor® electronic earmuffs is entitled to protection under California common law.

182. Defendant's marketing, advertising, promoting, offering to sell, selling, and distributing Shield Pro electronic earmuff products constitutes a violation of common law trade dress infringement under the laws of California by infringing GSM's trade dress in the design of Walker's® Razor® electronic earmuffs.

183. Defendant's unauthorized use of GSM's trade dress and / or colorable imitations thereof, has caused a likelihood of confusion, actual confusion, mistake, or deception as to the affiliation, connection, sponsorship, and / or association of Defendant's Shield Pro products with GSM and as to the origin, sponsorship, license, and / or approval of the infringing Shield Pro products, at least by creating the false and misleading impression that the infringing Shield Pro products are manufactured by, authorized by, licensed by, or otherwise associated with GSM.

184. GSM's trade dress in the Walker's® Razor® electronic earmuffs is distinctive.

185. GSM's trade dress in the Walker's® Razor® electronic earmuffs has acquired distinctiveness through secondary meaning.

186. GSM's trade dress acquired secondary meaning before Defendant commenced its unlawful use of GSM's trade dress in connection with Defendant's Shield Pro infringing products.

187. GSM's trade dress in the Walker's® Razor® electronic earmuffs is nonfunctional.

188. Defendant has infringed GSM's trade dress in violation of California common law, and as a result, has been unjustly enriched by avoiding the costs that GSM has invested in establishing its trade dress, while unjustly profiting from the sale

46
COMPLAINT

of its Shield Pro earmuffs that uses GSM's trade dress.

189.   Defendant's unjust enrichment at GSM's expense has been intentional, willful, and malicious.

190.   Defendant's bad faith is evidenced at least by using GSM's trade dress for unjust enrichment and by Defendant's continuing disregard for GSM's trade dress rights, even after having actual notice.

191.   Defendant used the trade dress in the design of Walker's® Razor® electronic earmuffs with the clear intent of capitalizing off the goodwill and success of GSM's trade dress protected design.

192.   Defendant has made and will continue to make substantial profits and gains to which it is not entitled in law or equity.

193.   Defendant's acts have irreparably harmed, damaged, and will continue to damage GSM and GSM has no adequate remedy at law for the continued sale of Defendant's trade dress infringing Shield Pro electronic earmuffs.

194.   Defendant intends to continue its infringing acts and continue being unjustly enriched, unless restrained by this Court.

195.   Defendant's use of GSM's trade dress and/or colorable imitations thereof has caused and, unless permanently enjoined, will continue to cause substantial and irreparable injury to GSM for which GSM has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation of GSM for providing high quality products, including its Walker's® Razor® earmuffs.

196.   GSM is entitled to permanent injunctive relief, and GSM is also entitled to recover at least GSM's damages and Defendant's profits, punitive damages, costs, and reasonable attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, GSM respectfully prays for:

1.     A final judgment that Defendant has:

(a)  infringed  GSM's  U.S.  Copyright  Registration  No.  VAu1-377-848  for

"Electronic Ear Muffs," which was supplemented with VAu001419213 / 2020-10-28, in violation of the Copyright Act, Title 17 of the United States Code;

(b) infringed GSM's trade dress in the design of Walker's® Razor® electronic earmuffs in violation of 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act, Title 15 of the United States Code;

(c) diluted GSM's trade dress by blurring in the design of Walker's® Razor® electronic earmuffs in violation of 15 U.S.C. § 1125(c) of the Lanham Act, Title 15 of the United States Code;

(d) infringed GSM's trade dress in the design of Walker's® Razor® electronic earmuffs in violation of California common law for trade dress infringement;

(e) unfairly competed against GSM by using and infringing GSM's trade dress in the design of Walker's® Razor® electronic earmuffs in violation of California common law for unfair competition;

(f) been unjustly enriched by using and infringing on GSM's trade dress in the design of Walker's® Razor® electronic earmuffs in violation of California common law for unjust enrichment;

and that all of the foregoing wrongful activities by Defendant was willful.

2.    A permanent injunction enjoining Defendant from further copyright and trade dress infringement, dilution by blurring of GSM's famous trade dress in the design of GSM's Walker's® Razor® electronic earmuffs, and violations of California common law for trade dress infringement,  unfair competition, and unjust enrichment, including permanently enjoining Defendant and each of Defendant's officers, agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with Defendant, including at least from selling, offering to sell, distributing, importing, promoting, or advertising infringing Emblem Outdoor Shield Pro electronic earmuffs or any other products that use a copy, reproduction, or colorable imitation of GSM's copyrighted material and trade dress protected design in Walker's® Razor® electronic earmuffs, pursuant to at least 17 U.S.C. § 502 and  15

U.S.C. §§ 1116(a), 1125(c)(1);

3. An Order directing Defendant to remove all sales listings, advertisements, promotions, and marketing materials in connection with Emblem Outdoor Shield Pro electronic earmuffs from any and all e-commerce and social media websites, including Emblemoutdoor.com, Amazon.com, Walmart.com, Facebook.com, Instagram.com, and Youtube.com;

4. An Order directing Defendant to recall all infringing Emblem Outdoor Shield Pro electronic earmuffs sold and/or distributed and provide a full refund for all recalled infringing products;

5. An Order directing the impoundment or destruction of (i) all infringing Emblem Outdoor Shield Pro electronic earmuffs, including all recalled infringing products; (ii) any other products that use a copy, reproduction, or colorable imitation of GSM's trade dress for the design of Walker's® Razor® electronic earmuffs or GSM's copyrighted design drawings, that are in Defendant's possession or control; (iii) all plates, molds, and other means of making the infringing products in Defendant's possession, custody, or control; and (iv) all promotion and advertising materials related to the infringing products in Defendant's possession, custody, or control, including materials found on the internet, pursuant to at least 17 U.S.C. § 503 and 15 U.S.C. § 1118;

6. An Order directing Defendant to publish a public notice providing proper attribution of GSM's copyright and trade dress in GSM's Walker's® Razor® electronic earmuffs, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

7. An Order barring importation of infringing Emblem Outdoor Shield Pro products and/or colorable imitations thereof into the United States, and barring entry of the infringing Emblem Outdoor Shield Pro products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 17 U.S.C. § 603 and 15 U.S.C. § 1125(b);

8.     An award of Defendant's profits and GSM's actual damages or statutory damages, including enhanced statutory damages for willful infringement, prejudgment and post judgment interest, and reasonable attorney's fees and costs pursuant to at least 17 U.S.C. § 504 and 15 U.S.C. § 1117, as well as punitive damages; and

9.     Such other and further relief as this Court deems just and proper at law or equity.

### **DEMAND FOR JURY**

GSM hereby demands a jury trial on all issues so triable.

DATED:  December 3, 2025          By:  /s/ Rami Bachour
                                        Rami Bachour
                                        rbachour@bachmili.com
                                        BACH MILI LLP

                                        J. David Cabello (*pro hac vice* to be filed)
                                        david@chzfirm.com
                                        *Attorney-in-charge*
                                        Texas Bar No. 03574500
                                        CABELLO HALL ZINDA, PLLC

                                        *Attorneys for Plaintiff Good Sportsman Marketing, LLC*